# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| **KYLE M. SHORT,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 4:11CV1164MLM** |
| | ) | |
| **MICHAEL BOWERSOX,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## <u>MEMORANDUM OPINION</u>

This matter is before the court on the Petition for Writ of Habeas Corpus filed by Petitioner Kyle M. Short ("Petitioner") pursuant to 28 U.S.C. § 2254.  Doc. 1.  Respondent filed  a Response to Order to Show Cause Why a Writ of Habeas Corpus Should Not Be Granted.  Doc. 12.  Petitioner filed a Reply to Respondent's Response. Doc. 17. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Doc. 11.

## I.
## PROCEDURAL HISTORY

Petitioner was charged, by Second Amended Information, with three counts of second-degree statutory rape, pursuant to Mo. Rev. Stat. § 566.034, in that between September 1, 2006, and December 16, 2006, in Warren County, Missouri, Petitioner, either alone or with another or others, had sexual intercourse with L.K. and at the time L.K. was less than seventeen years of age and Petitioner was twenty-one years of age or older.  Petitioner was also charged with one count of victim tampering, pursuant to Mo. Rev. Stat. § 575.270, in that on or between December 16, 2006, in Warren County, Petitioner, either alone or with another or others, told another person to contact the victim, L.K. and such conduct was a substantial step toward the commission of the crime of victim tampering and was done for the purpose of committing victim tampering.  Petitioner was charged as

a persistent offender in that he previously pled guilty to two felonies committed at different times, which felonies were the felony of statutory rape in the second degree. Resp. Ex. B at 12-13.

Petitioner was tried before a jury on November 8, 2007. Resp. Ex. A, Trial Transcript ("Tr."). The Missouri appellate court held that, viewed in the light most favorable to the verdicts, the evidence at Petitioner's trial was as follows:[1]

> Defendant became involved with L.K., the victim, in the summer of 2006 through L.K.'s brother.  At that time, Defendant was twenty-two years old and L.K. was fifteen years old.  In the fall of 2006, Defendant and L.K. began a relationship and on at least three occasion he came to her parents' house and had sexual intercourse with her.  In late 2006, L.K. decided to end the relationship, but Defendant continued to call her and come by her home.  Defendant continued this behavior until December 14, 2006, when he was arrested for causing a disturbance outside of L.K.'s home.
>
> The following day, Defendant was questioned by police.  During the questioning, Defendant told the police that he knew L.K. was only fifteen years old an they were just friends.  When interrogated later that day, Defendant again stated that he and L.K. were friends and he thought that she was a beautiful girl.  Under further questioning, he eventually admitted that he had hugged L.K. once, but that was all.  Defendant then explained that he had kissed L.K. once on the lips, but that

---

[1]     In proceedings pursuant to 28 U.S.C. § 2254, a "state court's factual findings carry a presumption of correctness that will be rebutted only by clear and convincing evidence." Hall v. Luebbers, 341 F.3d 706, 712 (8th Cir. 2003) (citing 28 U.S.C. § 2254(e)(1); Lomholt v. Iowa, 327 F.3d 748, 752 (8th Cir. 2003)). See also Simmons v. Luebbers, 299 F.3d 929, 942 (8th Cir. 2002).  Explicit and implicit findings by state trial and appellate courts are presumed to be correct. Rushen v. Spain,464 U.S. 114, 120, (1983); Marshall v. Lonberger, 459 U.S. 422, 432 (1983); Sumner v. Mata, 449 U.S. 539, 545-47, 550 (1981). Additionally, the Eighth Circuit holds that a habeas petitioner must provide "clear and convincing" evidence "to overcome the presumption of correctness that the law assigns to" findings of the state courts. Ashker v. Class, 152 F.3d 863, 867 (8th Cir. 1998) (citing  28 U.S.C. § 2254(e)(1); 28 U.S.C. § 2254(d)(2);  Smith v. Jones, 923 F.2d 588, 590 (8th Cir. 1991)).  See also  Laws v. Armontrout, 863 F.2d 1377, 1381 (8th Cir. 1988).  The presumption applies to basic, primary or historical facts and the inferences that can properly be drawn regarding them. See Case v. Mondragon, 887 F.2d 1388, 1393 (10th Cir. 1989) (citing Marshall v. Lonberger, 459 U.S. at 431-32; Cuyler v. Sullivan, 446 U.S. 335, 341-42 (1980)). "Questions of witness credibility are usually considered to be issues of fact." Id.(citing Brown v. Allen, 344 U.S. 443, 506 (1953)).  Mixed questions of law and fact, however, are not entitled to a presumption of correctness pursuant to § 2254(d).  Cornell v. Nix, 976 F.2d 376, 382 (8th Cir. 1992).

was the only contract they had.  Detective Scott Schoenfeld told Defendant that he was going to talk to L.K. about the entire incident the first thing the following day, December 16, 2006.

During the night of December 15, 2006, Defendant made several collect calls from jail.  When collect calls are made from the Warren County jail, a recorded warning is given that the all calls will be recorded.  Two of the calls were to his grandmother, Joyce Crow.  Defendant asked his grandmother multiple times to tell his brother, Calvin, to call L.K., and tell her to say that they had done nothing more than kiss once.  When his grandmother asked "[w]hat little friend[,]" Defendant told her that he "ain't saying any names on this damn phone, and he [Calvin] knows who I'm talking about."  He stressed that Calvin had to do it before December 16, 2006, because "[t]hey're waiting to talk to her."  While on the phone with Defendant, Ms. Crow contacted Calvin on another phone, and relayed information to him. Calvin stated that he had tried to call twice, but that no one would answer the phone, and that he would try in the morning.  Defendant stressed that Calvin needed to contact L.K. that night because the police would be talking with her the next morning.  Calvin agreed to keep trying and eventually managed to speak to L.K.'s older sister, J.K. about her sister, L.K., and Defendant.   That same night, Defendant called his grandmother again, who told him that Calvin had reached L.K.'s house, but that they would not let him talk to her.  She told Defendant that Calvin would try again in the morning; Defendant told her that would be too late, and to have Calvin get somebody else to call L.K..  Defendant did not refer to L.K. by name during these calls.

Defendant was released from jail on December 16, 2006.   Detective Schoenfeld did not contact L.K. or her family until December 18, 2006, after having listened to the recordings of Defendant's collect phone calls from the night of December 15.  He met with L.K., J.K, and their mother that day.  L.K. discussed her relationship with Defendant, and stated that they had engaged in sexual intercourse at least three times.  Detective Schoenfeld had L.K. call Defendant to discuss the details of their relationship.  During the call, Defendant told L.K. to lie about their relationship, and to tell the police that they had done nothing more than kiss, otherwise he could go to prison for a long time.  Detective Schoenfeld's attempt to record that conversation, which he could hear, was only partially successful, capturing only the voices of L.K. and J.K., but not that of Defendant.  L.K.'s subsequent phone conversation with Defendant was successfully recorded.   In that conversation, Defendant again told L.K. to tell the police that they did nothing more than kiss, told her to lie about their relationship, and pressured her by asking if she wanted him to go to prison, by telling her that she would do it if she loved him, by threatening to kill himself, and by promising to leave her alone.  Defendant was arrested thereafter.

Resp. Ex. H at 2-4.

Petitioner was found guilty as charged. Tr. 187-88.  The trial court found that Petitioner was

a persistent offender and sentenced him to ten years imprisonment for each of the statutory rape

3

convictions, with these sentences to run concurrent with one another, and ten years imprisonment for the attempted tampering conviction, with that sentence to run consecutive to the other sentences. Resp. Ex. B at 46-47.  Petitioner filed a direct appeal with the Missouri appellate court. Resp. Ex. F.  By decision, dated January 20, 2009, the Missouri appellate court affirmed Petitioner's convictions and sentences. Resp. Ex. H.

On April 15, 2009, Petitioner filed a pro se post-conviction relief motion pursuant to Rule 29.15. Resp. Ex. K at 6-38.  Counsel was appointed on May 12, 2009, and filed an amended motion. Resp. Ex. at K at 39-103.  The motion court denied Petitioner's post-conviction relief motion. Resp. Ex. at K at 106-23.  Petitioner filed an appeal with the Missouri appellate court of the motion court's decision. Resp. Ex. L.   By decision, dated March 22, 2011, the Missouri appellate court denied Petitioner relief. Resp. Ex. N.  On April 14, 2011, the mandate issued on the appeal of Petitioner's post-conviction relief motion. Resp. Ex. O.

Petitioner filed his § 2254 Petition in which he raises the following issues:

**(1)** The State failed to produce sufficient evidence to support the charge of attempted victim tampering, and

**(2)** Petitioner received ineffective assistance of counsel because counsel failed to call his grandmother, Joyce Crow, as a witness.[2]

Doc. 1.

## III.
## EXHAUSTION, PROCEDURAL DEFAULT AND TIMELINESS ANALYSIS

---

[2]        Petitioner also sets forth fifteen other grounds for habeas relief.  As discussed below, Petitioner acknowledges that he procedurally defaulted these grounds.  Further, as found below, Petitioner has not stated cause and prejudice to excuse his procedural default.  As such, the court need not address the substance of Petitioner's additional grounds for relief.

To preserve issues for federal habeas review, a state prisoner must fairly present his or her claims to state courts during direct appeal or in post-conviction proceedings. <u>Sweet v. Delo</u>, 125 F.3d 1144, 1149 (8th Cir. 1997). Failure to raise a claim in a post-conviction appeal is an abandonment of a claim. <u>Id.</u> at 1150 (citing <u>Reese v. Delo</u>, 94 F.3d 1177, 1181 (8th Cir. 1996)). A state prisoner who fails "'to follow applicable state procedural rules [for] raising the claims' (citation omitted) . . . , is procedurally barred from raising them in a federal habeas action, regardless of whether he has exhausted his state-court remedies." <u>Id.</u> at 1151 (citing <u>Coleman v. Thompson</u>, 501 U.S. 722, 731-32 (1991)). "[A] prisoner must 'fairly present' not only the facts, but also the substance of his federal habeas corpus claim." <u>Abdullah v. Groose</u>, 75 F.3d 408, 411 (8th Cir. 1996) (en banc) (citation omitted). "[F]airly present" means that state prisoners are "required to 'refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue.'" <u>Id.</u> at 411-12. A state-law claim which is raised in state court which "is merely similar to the federal habeas claim is insufficient to satisfy the fairly presented requirement." <u>Id.</u> at 412.

The United States Supreme Court holds that a state prisoner can overcome procedural default if he or she can demonstrate cause and prejudice for the procedural default. <u>Dretke v. Haley</u>, 541 U.S. 386, 388-89 (2004). <u>See also</u> <u>Coleman</u>, 501 U.S. at 750 (holding that a state habeas petitioner can overcome procedural default by demonstrating cause for the default and actual prejudice or demonstrate that default will result in a fundamental miscarriage-of-justice; <u>Battle v. Delo</u>, 19 F.3d 1547, 1552 (8th Cir. 1994). The United States Supreme Court has recently held that because the "cause and prejudice standard is not a perfect safeguard against fundamental miscarriages of justice" the Court has "recognized a narrow exception to the cause requirement where a constitutional violation has 'probably resulted' in the conviction of one who is 'actually innocent' of the substantive

offense." Dretke, 541 U.S. at 393 (citing Murray v. Carrier, 477 U.S. 478, 496 (1986); Schlup v. Delo, 513 U.S. 298 (1995)). "[A] habeas petitioner who wishes to have a procedurally defaulted claim evaluated on its merits 'must show by clear and convincing evidence that but for a constitutional error, no reasonable juror would have found the petitioner [guilty] under the applicable state law.'" McCoy v. Lockhart, 969 F.2d 649, 651 (8th Cir. 1992 ) (citation omitted). Actual innocence is required to meet the miscarriage-of-justice exception. See Sweet, 125 F.3d at 1152 (citing Schlup, 513 U.S. at 316). The Supreme Court, however, has limited the application of the actual innocence exception to the capital sentencing context. See Dretke, 541 U.S. at 393. In Dretke, the Court declined to extend the actual innocence exception to procedural default of constitutional claims challenging noncapital sentencing error. Rather, the Court held "that a federal court faced with allegations of actual innocence, whether of the sentence or of the crime charged, must first address all nondefaulted claims for comparable relief and other grounds for cause to excuse the procedural default." Id. at 393-94.

In any case, a "'bare, conclusory assertion' that a petitioner is actually innocent is insufficient to excuse a procedural default." Sweet, 125 F.3d at 1152 n.9 (citing Weeks v. Bowersox, 119 F.3d 1342, 1352-55 (8th Cir. 1997)). To meet the requisite standard  for a probability of innocence a habeas petitioner must show that "it is more likely than not that no reasonable juror would have convicted him in light of new evidence." Schlup, 513 U.S. at 327. (emphasis added). Evidence is "new" if it was "not available at trial and could not have been discoverable earlier through the exercise of due diligence." Amrine v. Bowersox, 238 F.3d 1023, 1029 (8th Cir. 2001).

It has been held that "novel circumstances and arguments" may constitute cause to excuse procedural default. McKinnon v. Lockhart, 921 F.2d 830, 833-34 (8th Cir. 1990). "[T]he Supreme Court [has] recognized that cause may exist when the claim raised is so novel that there was no

reasonable basis to have asserted it at the time of a petitioner's state appeals." Id. at 833(citing Reed v. Ross, 468 U.S. 1, 16 (1984)).   However, "[if] the 'tools were available' for a petitioner to construct the legal argument at the time of the state appeals process, then the claim cannot be said to be so novel as to constitute cause for failing to raise it earlier." Id. (citing Leggins v. Lockhart, 822 F.2d 764, 766 (8th Cir.1987)).

In regard to the "prejudice" component of "cause and prejudice," as discussed above, "actual prejudice" is required to overcome the procedural bar. Zinzer v. Iowa, 60 F.3d 1296, 1299 (8th Cir. 1995).  "Prejudice, within the meaning of [the ineffective assistance of counsel standard of Strickland v. Washington, 466 U.S. 668 (1984)] occurs when appellate counsel's deficient performance renders the result of the direct appeal unreliable or fundamentally unfair." Id.  The Eighth Circuit, however, holds that the "'prejudice' component of 'cause and prejudice' [necessary to excuse procedural default] is analytically distinct from the Strickland prejudice." Id. at 1299 n.7.  The "'actual prejudice' required to overcome the procedural bar  must be a higher standard than the Strickland prejudice required to establish the underlying claim for ineffective assistance of counsel."  Id.  (citing United States v. Frady, 456 U.S. 152, 165-68 (1982) (holding that to obtain habeas relief on a defaulted claim, a petitioner must clear a significantly higher hurdle than would exist on direct appeal).

Additionally, § 2244(d)(1) establishes a 1-year limitation period on petitions filed pursuant to § 2254.

Petitioner raised the issues of Grounds 1 and 2 before the Missouri appellate court.  As such, the court finds that Petitioner has not procedurally defaulted Grounds 1 and 2. Petitioner acknowledges that he did not raise before the Missouri appellate court the additional issues which he designates as Grounds 3-16 in his §2254 Petition but states that his procedural default of these Grounds should be excused.  As the basis for this argument, Petitioner contends that he asked his

post-conviction appellate counsel to raise, on appeal, all issues which were raised before the motion court but that appellate counsel did not do so. Doc. 4 at 18-19.  In his Reply, Petitioner extensively argues that the Missouri Public Defenders Office is understaffed and that his "post-conviction appellate counsel was [] forced into creating the procedural bars on Petitioner's remaining claims." Doc. 17 at 26.

The Eighth Circuit has made it clear that "[e]rrors made by PCR counsel are not actionable as cause to excuse procedural defaults for habeas purposes." Chambers v. Bowersox, 157 F.3d 560, 566 n. 6 (8th Cir.1998); Clemmons v. Delo, 124 F.3d 944, 947 (8th Cir.1997). "'[A]ttorney error that results in a procedural default' is not cause [to excuse procedural default] unless the attorney's performance was constitutionally deficient." Armstrong v. Iowa, 418 F.3d 924, 927 (8th Cir. 2005) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986))).  A habeas petitioner, therefore, cannot rely on the ineffectiveness of his post-conviction counsel in failing to raise in State court the claims he seeks to assert in a § 2254 petition because "there is no Sixth Amendment right to the effective assistance of post-conviction counsel." Id. (construing Coleman v. Thompson, 501 U.S. 722, 752-54 (1991)).[3]

---

[3]        Petitioner cites Simmons v. Lockhart, 915 F.2d 372, 376 (8th Cir. 1990), in support of his argument that ineffective assistance of post-conviction relief counsel can be cause and prejudice to excuse procedural default. Doc. 17 at 11.  As explained by the court in Farmer v. Iowa, 153 F. Supp.2d 1034, 101039-40 (N.D. Iowa 2001), in response to such an argument:

> [T]he Eighth Circuit Court of Appeals has since questioned the continued viability of this part of the opinion in Simmons in light of Coleman v. Thompson, 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). See Grubbs v. Delo, 948 F.2d 1459, 1466 (8th Cir.) ... . Moreover, the Eighth Circuit Court of Appeals has expressly held since Simmons that "any deficiencies in [a post-conviction relief] lawyer's performance could not have constituted cause for ... purposes" of avoiding a procedural default. Burns v. Gammon, 173 F.3d 1089, 1092 (8th Cir.1999); Cornell v. Nix, 976 F.2d 376, 381 (8th Cir.1992) ("In Coleman v. Thompson, 501 U.S. 722, 111 S.Ct. 2546, 2566, 115 L.Ed.2d 640 (1991), the United States Supreme Court held that there is no cognizable habeas claim for ineffective assistance of postconviction counsel

Moreover, the "'winnowing' of which issues to bring on appeal is a 'hallmark of effective advocacy;' counsel is not required to raise every conceivable issue on appeal." <u>Garrett v. United States</u>, 78 F.3d 1296, 1306 (8th Cir. 1996).  The Eighth Circuit has stated that "'[l]aw is an art, not a science, and many questions that attorneys must decide are questions of judgment and degree. Among the most difficult are decisions as to what issues to press on appeal. . . .  It is possible to criticize [an attorney's] choice in hindsight.'" <u>Id.</u> (quoting <u>Simmons v. Lockart</u>, 915 F.2d 372,  275 (8thCir. 1990)).  The court finds, therefore, that Petitioner has not suggested cause and/or prejudice to excuse his default of Grounds 3-16.  As such, the court finds that Petitioner should be denied habeas relief on Grounds 3-16 on the basis of procedural default.   Additionally, the court finds that Petitioner's § 2254 Petition was timely filed.

## III.
## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 ("AEDPA"), applies to all petitions for habeas relief filed by state prisoners after this statute's effective date of April 24, 1996. <u>Lindh v. Murphy</u>, 521 U.S. 320, 326-29 (1997).  In conducting habeas review pursuant to § 2254 a federal court is limited to deciding whether decisions of state courts were

--------

because no constitutional right to counsel exists in postconviction proceedings. Thus, postconviction counsel's failure to more fully investigate the potential of Cross's recantation cannot constitute 'cause.' ") ... . Even if the part of the opinion in <u>Simmons</u> upon which Farmer relies is still "good law," Farmer has made no more than conclusory assertions of ineffective assistance of post-conviction relief counsel, without ever attempting to demonstrate that his claim of ineffective assistance of post-conviction relief counsel satisfies the two prongs of the <u>Strickland</u> analysis." ... . Therefore, Farmer's third objection must also be overruled.

As such, <u>Simmons</u>, 915 F.2d at 376, does not support Petitioner's position that his procedural default of Grounds 3-16 should be excused because of ineffective assistance of post-conviction relief counsel.

"contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court."  28 U.S.C. § 2254(d)(1).  "'Federal law, as determined by the Supreme Court,' refers to 'the holdings, as opposed to the dicta, of [the Supreme] Court's decisions.'" Evenstad v. Carlson, 470 F.3d 777, 782-83 (8th Cir. 2006) (quoting Williams v. Taylor, 529 U.S. 362, 412 (2000)).  To obtain habeas relief, a habeas petitioner must be able to point to the Supreme Court precedent which he thinks the state courts acted contrary to or applied unreasonably. Id. at 783 (citing Buchheit v. Norris, 459 F.3d 849, 853 (8th Cir. 2006); Owsley v. Bowersox, 234 F.3d 1055, 1057 (8th Cir. 2000)).  Thus, where there is no federal law on a point raised by a habeas petitioner, a federal court cannot conclude either that a state court decision is "'contrary to, or involved an unreasonable application of, clearly established Federal law' under 28 U.S.C. §2254(d)(1)." Id. at 784.  "When federal circuits disagree as to a point of law, the law cannot be considered 'clearly established' under 28 U.S.C. § 2254(d)(1).  Id. at 783 (citing Tunstall v. Hopkins, 306 F.3d 601, 611 (8th Cir. 2002)).  See also Carter v. Kemna, 255 F.3d 589, 592 (8th Cir. 2001) (holding that in the absence of controlling Supreme Court precedent, a federal court cannot reverse a state court decision even though it believes the state court's decision is "possibly incorrect").

In Williams v. Taylor, 529 U.S. 362 (2000), the United States Supreme Court set forth the requirements for federal courts to grant writs of habeas corpus to state prisoners under § 2254.  The Court held that "§2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for writ of habeas corpus with respect to claims adjudicated on the merits in the state court." Id. at 412.  The Court further held that the writ of habeas corpus may issue only if the state-court adjudication resulted in a decision that:

> (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2)

10

"involved an unreasonable application of . . . clearly established Federal Law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the"unreasonable application"clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams, 529 U.S. at 412-13.

Williams further holds that the writ will not issue merely because the federal court concludes that the relevant state court decision erroneously or incorrectly applied clearly established federal law. See id. at 411.  "'Rather [the] application [by the state-court] must also be unreasonable.'" Copeland v. Washington, 232 F.3d 969, 973 (8th Cir. 2000) (quoting Williams, 529 U.S. at 411). See also Siers v. Weber, 259 F.3d 969, 973 (8th Cir. 2001).

The Court further explained in Williams that for a state-court decision to satisfy the "contrary to" prong of § 2254(d)(1), the state court must apply a rule that "contradicts the governing law as set forth in [Supreme Court] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Court's] precedent." 529 U.S. at 406. See also Price v. Vincent, 538 U.S. 634, 640 (2003).  It is not necessary for a state-court decision to cite, or even be aware of, applicable federal law, "so long as neither the reasoning nor the result of the state-court decision contradicts" federal law.  Early v. Packer, 537 U.S. 3, 8 (2002).

For a state court decision to satisfy the "unreasonable application" prong of § 2254(d)(1), the state court decision must "identif[y] the correct governing legal principle from [the Supreme] Court's decisions but unreasonably appl[y] that principle to the facts of [a] prisoner's case." Williams, 529

11

U.S. at 413. See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001). Upon explaining § 2254's legal standard, the Supreme Court held in Penry that "even if the federal habeas court concludes that the state court decision applied clearly established federal law incorrectly, relief is appropriate only if that application is also objectively unreasonable." Id. at 793 (citing Williams, 529 U.S. at 410-11). The Eighth Circuit has held that "[t]o the extent that 'inferior' federal courts have decided factually similar cases, reference to those decisions is appropriate in assessing the reasonableness of the state court's resolution of the disputed issue." Atley v. Ault, 191 F.3d 865, 871(8th Cir. 1999).

Additionally, § 2254(d)(2) provides that an application for writ of habeas corpus should not be granted unless the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." Further, pursuant to § 2254(e)(1), "[a] state court's determination on the merits of a factual issue is entitled to a presumption of correctness." Boyd v. Minnesota, 274 F.3d 497, 500 (8th Cir. 2001). The state court's factual determinations "must be rebutted by clear and convincing evidence." King v. Kemna, 266 F.3d 816, 822 (8th Cir. 2001). For purposes of federal habeas relief, the state court decision involves an unreasonable determination of the facts in light of the evidence presented in state court proceedings "only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record." Lomholt v. Iowa, 327 F.3d 748, 752 (8th Cir. 2003). See also Jones v. Luebbers, 359 F.3d 1005, 1011 (8th Cir. 2004) ("[A] state court decision involves 'an unreasonable determination of the facts in light of the evidence presented in the state court proceedings,' 28 U.S.C. § 2254(d)(2), only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record. 28 U.S.C. § 2254(e)(1).").

The United States Supreme Court has defined the circumstances under which a state court reasonably applied federal law as follows:

> At the same time, the range of reasonable judgment can depend in part on the nature of the relevant rule. If a legal rule is specific, the range may be narrow. Applications of the rule may be plainly correct or incorrect. Other rules are more general, and their meaning must emerge in application over the course of time. Applying a general standard to a specific case can demand a substantial element of judgment. As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations. Cf. Wright v. West, 505 U.S. 277, 308-309, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992) (KENNEDY, J., concurring in judgment).

Yarborough v. Alvarado, 541 U.S. 652, 644 (2004).

## IV.
## DISCUSSION

**Ground 1 - The State failed to produce sufficient evidence to support the charge of attempted victim tampering:**

In support of Ground 1, Petitioner contends that his asking his grandmother to tell Petitioner's brother, Calvin, to speak with L.K. and tell her not to say anything about what transpired other than that they just kissed was not a substantial step towards committing the crime of victim tampering. Petitioner further states that he was twenty-two and L.K. was fifteen when then met; that she was a willing participant; and that his statement to his grandmother was "too ambiguous" to prove that L.K. was his "little friend." Doc. 4 at 2-3, 7-8.  Petitioner also argues that he "never actually stated who he wanted his brother to call"; that he never called the victim; that the victim called him; and that "the only time that Petitioner attempted to persuade the victim, was when the police instigated the attempt." Doc. 17 at 1-2.

Upon addressing the issue of Ground 1, the Missouri appellate court held:

> In reviewing a sufficiency of the evidence claim, the Court determines whether sufficient evidence allows a reasonable trier of fact to find guilt. State v. Ecford, 239

S.W.3d 125, 127 (Mo App. 2007).  This Court views the evidence and the inferences therefrom in the light most favorable to the verdict, disregarding all evidence and inferences to the contrary. Id.

Section 575.270.1 provides that:

A person commits the crime of "victim tampering" if, with purpose to do so, he prevents or dissuades or attempts to prevent or dissuade any person who has been a victim of any crime or a person who is acting on behalf of any such victim from:

(1) Making any report of such victimization to any peace officer, or state, local or federal law enforcement officer or prosecuting agency or to any judge;

(2) Arresting or causing or seeking the arrest of any person in connection with such victimization.

Under section 564.011.1, a "substantial step" toward committing a crime is "conduct which is strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense."

Considering the surrounding circumstances relating to the telephone calls from Defendant to his grandmother on the night of December 15, 2006, which include his brother Calvin actually contacting J.K. that night after the first phone call from Defendant, as well as the substance of those telephone calls, it is a reasonable inference Defendant was trying to have Calvin persuade L.K. to lie about the nature and extent of their sexual relationship.  Further, given the subsequent phone conversation between Defendant and L.K., it is readily apparent that the State could have charged him with actual victim tampering, not merely attempted victim tampering.  Commission of the actual crime certainly is "conduct which is strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense."  There was sufficient evidence from which jurors could find Defendant guilty beyond a reasonable doubt of the crime of attempted victim tampering.  Point denied.

Resp. Ex. H at 5-6.

Pursuant to Williams, 529 U.S. 362,  the court will consider federal law applicable to the issue raised in Petitioner's Ground 1.  The United States Supreme Court stated in Wright  v. West, that "a claim that evidence is insufficient to support a conviction as a matter of due process depends on 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" 505 U.S.

14

277, 283-84 (1992) (citing  Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original).

See also Scott v. Jones, 915 F.2d 1188, 1190 (8th Cir. 1990); Haymon v. Higgins, 846 F.2d 1145, 1146 (8th Cir. 1988).  This standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the basic facts to ultimate facts." Jackson, 443 U.S. at 319.   See also  Whitehead v. Dormire, 340 F.3d 532, 536 (8th Cir. 2003) ("We must presume that the trier of fact resolved all conflicting inferences in the record in favor of the state, and we must defer to that resolution.") (internal citations omitted); Weston v. Dormire, 272 F.3d 1109, 1111 (8th Cir. 2001) ("In determining the sufficiency of the evidence in habeas cases under 28 U.S.C. § 2254, we view the evidence in the light most favorable to the prosecution and decide whether any rational jury could have found, beyond a reasonable doubt, all of the elements of the crime.") (citing Jackson, 443 U.S. at 319, 321, 324; Loeblein v. Dormire, 229 F.3d 724, 726 (8th Cir. 2000)).

First, the standard applied by the Missouri appellate court for determining the sufficiency of the evidence is identical to that established by the Supreme Court in Jackson, 443 U.S. at 319. Moreover, in regard to the elements of the crime of attempted victim tampering, as set forth by the Missouri appellate court, the evidence was that Petitioner called his grandmother and told her to tell his brother to tell the victim not to say that they had done anything other than kissed; that Petitioner said that his brother had to do this "before tomorrow" because that was when the police were going to interview the victim; that Petitioner reiterated those instructions four times; that Petitioner called the victim himself and told her to lie about their relationship; that, to get the victim to lie, Petitioner told her that he would go to jail for twenty-five or thirty years, that if she loved him, she would do this for him, and that he would leave her alone after the criminal case ended; and that he told the victim that he would kill himself if she did not lie.  As stated by the Missouri appellate court, a

rational trier of fact could find Petitioner guilty of the elements of the crime of which he was convicted.  As such, the court finds that the decision of the Missouri appellate court, in regard to the issue of Petitioner's Ground 1 is not contrary to federal law and that it is a reasonable application of federal law. See Williams, 529 U.S. 362; Wright, 505 U.S. 277, 283-84; Jackson, 443 U.S. at 319, 321, 324.  Additionally, the Missouri appellate court reasonably applied federal law to the facts of Petitioner's case.  The court finds, therefore, that Petitioner's Ground 1 is without merit and that habeas relief on its basis should be denied.

**Ground 2 -  Petitioner received ineffective assistance of counsel because counsel failed to call his grandmother, Joyce Crow, as a witness**:

In support of Ground 2 Petitioner contends that had counsel called Ms. Crow as a witness at trial her testimony would have contradicted the State's evidence the he was aware of L.K.'s age  and would have established that L.K. told both Ms. Crow and Petitioner that she was seventeen. Doc. 4 at 9.  Petitioner further argues that, had counsel called Ms. Crow, the outcome of his trial would have been different. Doc. 17 at 5.  He also contends that counsel's decision not to call Ms. Crow "cannot be held trial strategy, because he in fact, did not have any strategy.  He failed to present any evidence to support Petitioner's innocence." Doc. 17 at 8.

Upon addressing the issue of Petitioner's Ground 2, the Missouri appellate court considered that Petitioner contended that, had his grandmother, Joyce Crow, been called to testify she would have testified that "during the phone conversation between Crow and the victim, the victim told Crow she was seventeen years old." Resp. Ex. N at 2.  The Missouri appellate court further held:

> Movant alleges that, had counsel called Crow as a witness, there is a reasonable probability that the outcome of the trial would have been different.  We disagree.
>
> ... .  To prevail on a claim of ineffective assistance, the movant must show that counsel failed to demonstrate the customary skill and diligence of a reasonably competent attorney in the same or similar circumstances, and that the movant was thereby prejudiced. Coates v. State, 939 S.W.2d 912, 914 (Mo. banc 1997).

16

When a movant alleges trial counsel was ineffective for failing to call a witness, four factors must be demonstrated including: (1) that counsel knew or should have known of the witness; (2) that the witness could have been located with reasonable investigation; (3) that the witness would have testified if called; and (3) that the testimony would have provided a viable defense. Williams v. State, 168 S.W.3d 433, 441 (Mo. banc 2005). The selection of witnesses for trail is a question of trial strategy. Bucklew v. State, 38 S.W.3d 395, 398 (Mo. banc 2001). It is virtually unchallengeable. Rousan v. State, 48 S.W. 576, 582 (Mo. banc 2001). Reasonable choice of trial strategy, no matter how ill-fated they appear in hindsight, cannot serve as a basis for a claim of ineffective assistance of counsel. Anderson v. State, 196 S.W.3d 28, 32 (Mo. banc 2006). The burden is on the movant to overcome the presumption that the decision to call a witness was not reasonable trial strategy. Bucklew, 38 S.W.3d 395 at 398. In order to satisfy the second prong of prejudice, the movant must show that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. Rousan, 48 S.W.3d 576 at 582.

Here, the motion court concluded that Crow's testimony would not have been credible and likely would have been hurtful to the defense. Similar to Rousan, where the witness had a prior conviction harming his credibility, here Crow was implicated in carrying out part of the crime with Movant, victim tampering. Id. at 584. Movant contacted Crow from jail and asked her to contact his brother to help him reach the victim and tell her to lie to police. Crow then made the call to Movant's brother. This, along with familial bias, seriously affected Crow's credibility at trial. Even more, Crow's testimony would not have established that Movant believed victim to be seventeen years-old, only that Crow believed victim to be seventeen years-old. Crow's belief as to the victim's age does not provide Movant with a viable defense. Thus, it was sound trial strategy by Counsel not to call Crow as a witness.

Further, Movant was not prejudiced by the decision [not] to call Crow at trial. The motion court found that Crow was not a credible witness. When the motion court finds that a witness lacks credibility, the movant has failed to prove by a preponderance of the evidence that he was prejudices by ineffective assistance of counsel. Montgomery v. State, 631 S.W.2d 671, 672 (Mo. App. E.D. 1982). Thus, because the motion court found Crow incredible, her absence did not prejudice the trial.

Movant has failed to show that Crow would have provided a viable defense. Williams, 168 S.W.3d 433 at 411. Further, Movant failed to show that there was a reasonable probability Crow's testimony would have resulted in a different outcome at trial. Rousan, 48 S.W.3d 576 at 582. Point denied.

Resp. Ex. N at 2-4.

Pursuant to Williams, 529 U.S. at 412-13, the court will consider federal law applicable to

Petitioner's Ground 2. Federal law provides that to prove ineffective assistance of counsel, a habeas

petitioner must show that: "(1) his counsel so grievously erred as to not function as the counsel guaranteed by the Sixth Amendment; and (2) his counsel's deficient performance prejudiced his defense." Auman v. United States, 67 F.3d 157, 162 (8th Cir. 1995) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). The "performance" prong of Strickland requires a showing that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690. To overcome this presumption, a petitioner must prove that, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id.

Even if a petitioner satisfies the performance component of the analysis, he is not entitled to relief unless he can prove sufficient prejudice. Id. at 697. To do so, a petitioner must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 669. The court is not required to "address both components of the [effective assistance of counsel] inquiry if [a petitioner] makes an insufficient showing on one [component]." Id. at 697.

The Supreme Court holds that judicial scrutiny of counsel's performance must be highly deferential and that trial counsel's performance must not be judged in hindsight. Strickland, 466 U.S. at 688-89. Counsel must exercise reasonable diligence to produce exculpatory evidence. Kenley v. Armontrout, 937 F.2d 1298, 1304 (8th Cir. 1991). The Eighth Circuit has stated that "[d]ecisions relating to witness selection are normally left to counsel's judgment, and 'this judgment will not be second-guessed by hindsight.'" Hanes v. Dormire, 240 F.3d 694, 698 (8th Cir. 2001) (citations omitted). Where some potential witnesses' testimony might have been helpful in rebutting or clarifying evidence, in order to establish a constitutional violation a habeas petitioner must establish

18

that the "proffered testimony was so important as to put counsel's failure to consult with or call [ ] witnesses outside the wide range of strategic choices that counsel is afforded." Id.  The decision whether to call witnesses may be a matter of trial strategy. Hall v. Lubbers,  296 F.3d 685, 694 (8th Cir. 2002); Battle v. Delo, 19 F.3d 1547,1556 (8th Cir. 1994). "Strategic decisions 'made after thorough investigation of law and facts ... are virtually unchallengeable,' even if that decision later proves unwise." Strickland, 466 U.S. at 590.

Upon considering Petitioner's claim of ineffective assistance of counsel, the Missouri appellate court considered and applied the two-pronged test set forth in Strickland.  Specifically, in regard to counsel's failing to call Ms. Crow, consistent with federal law, the Missouri appellate court considered that the motion court correctly concluded that she would not have been a credible witness; that she would not have established that Petitioner believed the victim was seventeen; that Ms. Crow's testimony would not have provided Petitioner with a viable defense; and that, therefore, it was sound trial strategy not to call her as a witness.  Further, consistent with federal law, the Missouri appellate court considered that Petitioner failed to establish that he was prejudiced by counsel's alleged ineffectiveness. See Strickland, 466 U.S. at 687-88, 690; Hall,  296 F.3d at 694; Hanes, 240 F.3d at 698.  As such, the court finds that the decision of the Missouri appellate court, in regard to Petitioner's Ground 2, is not contrary to federal law and that it is a reasonable application of federal law. See Williams, 529 U.S. at 412-13.  Additionally, the Missouri appellate court reasonably applied federal law to the facts of Petitioner's case.  The court finds, therefore, that Ground 2 is without merit and that habeas relief on its basis should be denied.

## V.
## CONCLUSION

For the reasons stated above, the court finds that Petitioner's Grounds 1 and 2 are without merit and that he has procedurally defaulted Ground 3-16.  As such, Petitioner's § 2254 Petition for habeas relief should be denied in its entirety.

The undersigned further finds that the grounds asserted by Petitioner do not give rise to a any issues of constitutional magnitude.  Because Petitioner has made no showing of a denial of a constitutional right, Petitioner will not be granted a certificate of appealability in this matter.  <u>See</u> <u>Tiedeman v Benson</u>, 122 F.3d 518, 522 (8th Cir. 1997).

Accordingly,

**IT IS HEREBY ORDERED** that the Petition filed by Petitioner for habeas corpus pursuant to 28 U.S.C. § 2254 is **DENIED**, in its entirely;  Doc. 1

**IT IS FURTHER ORDERED** that a separate judgement will be entered this same date;

**IT IS FURTHER ORDERED** that, for the reasons stated herein, any motion by Petitioner for a certificate of Appealability will be **DENIED**.

<u>/s/Mary Ann L Medler</u>
MARY ANN L. MEDLER

Dated this <u>19th</u> day of July, 2012.                    UNITED STATES MAGISTRATE JUDGE